```
 1                IN THE UNITED STATES DISTRICT COURT

 2                FOR THE WESTERN DISTRICT OF OKLAHOMA

 3
     ALICE SHACKELFORD
 4
             Plaintiff,
 5                                              No. CIV-18-0456-HE
         vs.
 6
     AMERICAN INCOME LIFE
 7   INSURANCE COMPANY

 8           Defendant.
     ~~~~~~~~~~~~~~~~~~~~~~
 9

10

11

12                      DEPOSITION OF

13                   STEVEN PLITT, ESQ.

14

15                      July 24, 2019

16                        10:00 a.m.

17

18              1850 North Central Avenue
                       Suite 2400
19                  Phoenix, Arizona

20

21

22

23

24

25         Talia Douglas, RPR, CR No. 50775
```

```
 1                  APPEARANCES OF COUNSEL

 2
     For the Plaintiff:
 3
         FULMER SILL
 4       JACOB L. ROWE, ESQ.
         1101 North Broadway Avenue
 5       Oklahoma City, OK 73103
         405.510.0077
 6       jrowe@fulmersill.com

 7
     For the Defendant:
 8
         PHILLIPS MURRAH, P.C.
 9       KATHRYN D. TERRY, ESQ.
         CANDACE WILLIAMS LISLE, ESQ.
10       101 North Robinson, 13th Floor
         Oklahoma City, OK 73102
11       405.606.4713
         kdterry@phillipsmurrah.com
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1   **processing the Shackelford claim are not inconsistent with**

2   **the covenant of good faith and fair dealing.**

3       A.   Right.  And the type of mistakes are not

4   violative -- the types of mistakes that were made are not

5   violative of the covenant of good faith and fair dealing.

6       **Q.   And then on page 33, opinion 7, generally,**

7   **American Income's processing of the Shackelford accidental**

8   **death benefit claim complied with industry standard in**

9   **practice, except for the mistakes identified herein.**

10      A.   Yes.

11      **Q.   Any changes or revisions --**

12      A.   No.

13      **Q.   -- that need to be made?**

14              **Number 8, American Income's processing of the**

15  **Shackelford accidental death benefit claim complied with**

16  **the implied covenant of good faith and fair dealing.  The**

17  **mistakes that were made did not rise to the level of**

18  **breaches of the implied covenant of good faith.**

19              **Is that still your opinion?**

20      A.   Yeah.  I would, again, exchange breaches for were

21  not inconsistent with the implied covenant of good faith

22  and fair dealing.

23      **Q.   What's the difference between breaching and not**

24  **being inconsistent?**

25      A.   I just don't want there to be any confusion that



1  I'm not offering a legal opinion.

2  **Q.  Does the substance of the opinion change with that**
3  **language or is it -- or is it just a means of making sure**
4  **that the judge knows you're not stepping on his toes?**

5  A.  I just don't want the judge to think I'm stepping
6  on his toes.

7  **Q.  Okay.  And then you disagree with Mr. Welch's**
8  **opinion on a number of issues, and we'll go ahead and get**
9  **to those later.**

10  **Let's go back to page 24, if we could.**

11  **Mr. Plitt, do you know the elements that Ms.**
12  **Shackelford must prove in order to prevail in her bad faith**
13  **claim in this case?**

14  A.  Sure.

15  Under Oklahoma law, she must prove that there
16  was a contract.  She must prove that the insurance company
17  acted unreasonably.  She must prove that they acted more
18  than with negligence, but less than what is required for
19  punitive damages.  And she must prove damages flowing there
20  from.

21  She -- I think you also have to prove that
22  it's a covered claim.

23  **Q.  You stated it exactly as I would have.  That's**
24  **exactly right.**

25  A.  Every once in a while, I get it right.



1    Q.  A number of fun colloquialisms to express that
2  thought.
3           I found the Brown case that I was talking
4  about earlier.  This is from page 734 of the Brown versus
5  Superior Court in and for Maricopa County, 670 P second
6  725.
7           And the quote that I like is that, further,
8  bad faith actions against an insurer, like actions by a
9  client against an attorney, patient against a doctor, can
10 only be proved by showing exactly how the company processed
11 the claim, how thoroughly it was considered, and why the
12 company took the action that it did.
13          And I think that we established earlier that
14 one of the important questions that any litigant here has
15 to answer is, one, why did the insurance company take the
16 action that it did, right?
17          MS. TERRY:  Object to the form.
18          THE WITNESS:  In a general sense, that's
19 true.
20 BY MR. ROWE:
21   Q.  Many of your opinions deal with the reasonableness
22 conduct that American Income took in handling this claim,
23 right?
24   A.  Yes.
25   Q.  How do you define reasonableness?



1   A.   Well, it's almost like the old supreme court adage
2   of pornography.  You know it when you see it.
3            Even an old dog knows when it's been kicked
4   versus tripped over.  You know, it's -- it's, does it
5   confirm to what -- let me take a step back.
6            Reasonableness is a continuum for purposes of
7   all bad faith standards throughout the United States
8   because the common denominator is reasonableness.
9            Some jurisdictions have a pure scienter
10  element.  Some don't.  Some have a heightened, I call it,
11  unreasonableness plus standard.  And generally what
12  unreasonable means -- the only way to understand what
13  reasonable means is to understand the negative of
14  reasonable.
15           So if I were explaining this to my students,
16  which is what I would do, I would say, when you look at
17  standards that are based on reasonableness for bad faith,
18  it is difficult to find out what that means, except to look
19  at the absence of it.
20           Because many jurisdictions have said that if
21  there's any reasonable support for the decision, then it is
22  not, by definition, unreasonable.  So I tell my students to
23  look for the absence of reasonableness instead of looking
24  for reasonableness.
25           And so if there's a basis for them to do what



1   they did from -- in the claim environment, then you may

2   have a situation where, on a continuum of reasonable

3   alternatives, this is one of them.

4          And even though you may prioritize them with

5   some being most reasonable and others being less reasonable

6   but still on continuum of reasonableness, that's how you

7   determine reasonableness.

8          So it's not -- it's best to find in its

9   absence, and it's -- if you're on a continuum, be weary not

10  to say just because something is more reasonable than a

11  lesser reasonable alternative that somehow that makes it

12  unreasonable.

13         You have to fall off -- I call it the

14  Christopher Columbus principle.  You've got to sail your

15  boat off the edge of the earth because the flatness of the

16  earth is the reasonableness scale.  That's the best I can

17  do.

18     **Q.   Okay.   And there's a lot to unpack there.**

19     A.   Yes.

20     **Q.   I'm going to start at the top.**

21          **You used a -- you used a Latin term.**

22          **Is that a Latin term, scienter?**

23     A.   Scienter.  Yeah, it probably is --

24     **Q.   Okay.**

25     A.   -- but --



1     Q.   I recognize the word, but I have no idea what that
2  means.
3          And if I -- I'm sure that I did one at one
4  point.
5     A.   Improper state of mind --
6     Q.   Okay.
7     A.   -- or in the criminal context, state of mind to
8  harm.
9     Q.   If I were to use it in context --
10    A.   It's --
11    Q.   -- that's where I would have went.  I just wanted
12 to make --
13    A.   It --
14    Q.   -- sure.
15    A.   -- really is state -- it's a state of mind with
16 intent to harm.
17         So in the criminal context, you had scienter.
18 You intended.
19    Q.   And in the State of Oklahoma, for Ms. Shackelford
20 to prevail, does she have to prove an intent to harm or
21 some sort of other evil intent on the part of American
22 Income?
23    A.   I imagine you're going to ask me several questions
24 like this, so let's just get it on the front side.  I'm
25 going to answer them --



1   **Q.   Okay.**

2   A.   -- but I'm not offering that as a legal opinion.
3   I'm just answering your question.  Okay?

4   **Q.   Okay.**

5   A.   My understanding is that you don't have the
6   traditional scienter element.

7              Your standard -- and Oklahoma is a little
8   difficult to quite place because it's unreasonableness
9   plus.

10             There's some additional element that is more
11  than negligence, which is you acted unreasonably or in the
12  absence of a reasonable basis.

13             No court has spelled out exactly what that
14  means other to set the boundary line.  It's less than what
15  it would be required for punitive damages.

16  **Q.   Okay.  So moving forward as we go through some of
17  these opinions, I would like to give you a road map for
18  what I would like to do for the rest of the day.**

19  A.   Okay.

20  **Q.   And this will be our road map until we get to Mr.
21  Welch's opinions.**

22             **You offered a number of opinions that to me
23  look a lot like legal opinions, whether or not an action
24  was reasonable, whether or not an action or a series of
25  actions was violative or consistent with the duty of good**



1  faith and fair dealing.
2         And what I would like to do is I would like
3  to figure out what standards you used in order to come to
4  those conclusions because I think the facts in this case
5  are what they are.
6         I want to know what standards you applied
7  those facts to, and in order for me to do that, we have to
8  do some definition work here.
9         And reasonableness for you is based on a
10 continuum of reasonableness.
11        And you would teach your students that
12 reasonableness is best defined by that which has, in the
13 past, been determined to be not reasonable, right?
14    A.   No.  It's the absence of a reasonable basis.
15        In other words, you look at it and you can
16 find no reasonable rational basis for what you're doing,
17 for what they did.
18        At least that is typically what the courts
19 look to for unreasonableness.
20    Q.   Okay.  Is your position that what is or is not
21 reasonable in an insurance context is best defined by what
22 is or is not reasonable?
23    A.   No.  It's a difficult concept as a matter of law.
24 It's best figured out by looking at the absence of
25 reasonableness.



1         Because if it is reasonable to some degree,
2  it falls on a continuum.  And falling on a continuum with
3  some being less reasonable but still reasonable and others
4  being more reasonable than alternatives, by definition, it
5  becomes reasonable.
6         And therefore, you don't have even the
7  negligence element of a bad faith claim, which requires as
8  one of its constituent elements unreasonableness.
9    Q.  So -- and I told you earlier, sometimes I can be
10 dense, Mr. Plitt.
11        The way that I see this is that at some point
12 we're going to go to trial and the jury is going to be
13 tasked with answering questions like, is this reasonable.
14        And they're going to be looking into a world
15 that we both agreed is more complex than the world in which
16 they probably live in and that there are a set of rules and
17 standards and behaviors in that claims environment that
18 maybe are foreign to them, right?
19        MS. TERRY:  Object to the form.
20        THE WITNESS:  Sure.
21 BY MR. ROWE:
22    Q.  And you, as an expert witness, are there to offer
23 testimony based on your years of training and experience
24 that would assist them in making those determinations,
25 right?



1     A.    Yes.

2     **Q.    One of the ways I see that you can assist them in**
3   **doing that is to establish for them standards of baseline**
4   **conduct.**

5           **But in order for me to understand how you**
6   **evaluate that conduct, the reasonableness of that conduct,**
7   **I think we have to get into the standards that define**
8   **reasonableness.**

9           MS. TERRY:  Object to form --

10          THE WITNESS:  I think you're going about --

11          MS. TERRY:  -- vague.

12          THE WITNESS:  You can go about it however you
13  want, and we can make this as complex as you want.  It's
14  not that complex to me.

15          When I look at a case like this given the
16  standard in Oklahoma, I'm asking myself fundamentally this
17  question.  This is what they did, and is there a reasonable
18  basis for them to do that.  And secondly, is there any
19  indication they purposely intended to harm the insured by
20  doing what they did.

21          Because even if it tends to be reasonable, if
22  their intent was to harm, then that's an improper motive
23  anyway, so --

24  BY MR. ROWE:

25    **Q.    That's like fast forwarding.**



1  A. Well, that's what I -- that's how I look at this.
2 And we can talk about how many angels are dancing on the
3 head of a pin.
4       What I'm going to be talking about is, based
5 on what people do and the insurance industry and claim
6 environments, were these reasonable goals in how they set
7 it up? Was there a reasonable basis for what they were
8 doing, recognizing that it may not be the most efficient?
9       But that's an evaluation the jury can or
10 cannot decide. Certainly there are lots of alternatives,
11 but does it fall on the continuum or does it sail off the
12 edge of the earth?
13       And secondly, do I find any indication of
14 intent to purposefully use the claim process to harm the
15 insured. Those are the things I'm looking for.
16       I'm not sitting here talking to the jury
17 about all the standards and everything else. You can ask
18 me those questions, and I'm going to try to answer them,
19 but they tend to be very nebulous.
20       But it's simple for me, and it's -- it's kind
21 of like this. Even an old dog knows when it's been tripped
22 over or kicked. Can you be precise with things? No. But
23 I've seen enough claims in my life to know when things are
24 not right and that they're wrong, and that's how I will
25 help a jury.



1      Because I have years and years and years of
2 looking at thousands of claims, and I have a sense for what
3 is reasonable, what are reasonable goals in a claim
4 environment, and that's what I'm going to talk about.  The
5 jury will have to decide whether they agree with that or
6 not.
7      So I hope that doesn't derail the discussion,
8 but that's --
9      Q.   I think that --
10     A.   I think you're making it much more complicated
11 than what my goal is.
12     **Q.   I think, Mr. Plitt, that might put us on a course**
13 **for exactly where I wanted us to go.**
14     A.   Okay.  Good.
15     **Q.   Let's look at page 25, and I'm looking through the**
16 **first partial paragraph that begins with investigation and**
17 **three lines down.**
18          **In your report here, you're talking about**
19 **kind of the process that American Income should go through**
20 **in processing or handling the Shackelford claim.**
21          **And you write, "The first question to be**
22 **resolved in the accident death benefit context is whether**
23 **the death occurred from natural causes or some form of**
24 **external cause," right?**
25     A.   Well, generally, given this policy platform.

