IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ALICE SHACKELFORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18-CV-456-HE |
| ) | |
| AMERICAN INCOME LIFE INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

### PLAINTIFF'S TRIAL BRIEF

COMES NOW Plaintiff Alice Shackelford and submits the following *Trial Brief* to aid the Court in presiding over the upcoming jury trial. This brief will provide the Court with an overview of the evidence to be presented by Plaintiff as well as address legal issues Plaintiff anticipates will arise during trial.

I.  **The Duty of Good Faith and Fair Dealing.**

As a provider of insurance in the State of Oklahoma, American Income Life Insurance Company owes its insureds a duty of good faith and fair dealing. *See Christian v. American Home Assurance Co.*, 1977 OK 141, 577 P.2d 899. This duty exists because Oklahoma recognizes the relationship between an insurer and an insured is a special one in that the insurance "industry has a quasi-public nature, that involves the public interest and for that reason it is largely governmentally regulated." *Id*. at 902. Moreover, "[t]he consumer has no bargaining power and no means

1

of protecting himself from the kinds of abuses" that may be perpetrated by an insurer." *Id*. at 902. Tort liability for breach of that duty arises where an insurance company unreasonably and in violation of the duty of good faith withholds payment of an insured's claim. Id.

At the core of the duty of good faith is an insurance company's obligation to perform a reasonably appropriate investigation of every claim presented by its policyholders. *Timmons v. Royal Globe Ins. Co.*, 1982 OK 97, par. 22, 653 P.2d 907, 914. A reasonably appropriate investigation must not be biased against the insured. *See McCoy v. Oklahoma Farm Bureau Mut. Ins. Co.*, 1992 OK 43, 841 P.2d 568. It must also investigate all known critical facts. *Hall v. Globe Life and Accident Ins. Co.,* 2007 OK 16, 157 P.3d 117. These obligations are non-delegable. *Timmons v. Royal Globe Ins. Co.*, 1982 OK 97, par. 22, 653 P.2d 907, 914.

Of course, the duty of good faith and fair dealing does not require payment of all insurance claims. "An insurer clearly has the right to resist payment and litigate any claim to which the insurance company has a reasonable defense." *Buzzard v. Farmers Ins. Co*., 1991 OK 127, par. 13, 824 P.2d 1105, p. 1109. If, after the completion of a thorough and unbiased investigation of a claim, a legitimate dispute regarding the applicability of coverage or the amount of damages exists, an insurance company will not be liable for bad faith. Be that as it may, when the insured presents sufficient evidence tending to prove bad faith, unreasonable conduct, or "evidence that the insurer did not actually rely on that legitimate dispute

but rather denied the claim for an illegitimate reason such as a systemic bad faith scheme…" or a sham defense, he or she may still recover damages for the violation of good faith and fair dealing. *Bannister v. State Farm Mutual Automobile Ins. Co.*, 692 F.3d 1117,1128 (10th Cir. 2012), (quoting *Vining v. Enterprise Financial Group, Inc*. 148 F.3d 1206, 1214 (10th Cir. 1998)).

Finally, in determining whether an insurance company violated the duty of good faith, the Court must focus the trial on the "knowledge and belief of the insurer during the time period the claim is being reviewed." *Duensing v. State Farm Fire and Casualty Co*., 2006 OK CIV APP 15, par. 38, 131 P.3d 127, 137-138, (citing to *Buzzard v. Farmers Ins. Co., Inc*., 1991 OK 127, 824 P.2d 1105.

## II.   The Evidence.

To prevail in this matter, Plaintiff must prove:

1. Defendant was required under the insurance policy to pay Plaintiff's claim;
2. Defendant's refusal to pay was unreasonable under the circumstances;
3. Defendant did not deal fairly and in good faith with Plaintiff;
4. Defendant's violation of the duty of good faith caused Plaintiff injury.

### A.   Defendant was required under the insurance policy to pay plaintiff's claim.

Defendant issued an accidental death and dismemberment policy to Odell Shackelford in February, 1996 and the same was effective on January 24, 2017. The policy provided a benefit in the amount of $40,000 payable to the policy's

beneficiary in the event the insured dies as the result of injuries sustained in an automobile accident. Mrs. Shackelford was the beneficiary of this policy.

Odell Shackelford was involved in an automobile accident on January 24, 2017. Mr. Shackelford received multiple injuries in the accident, including a broken spine, several broken ribs, and two collapsed lungs. These injuries took Mr. Shackelford's life.

Ms. Shackelford made a claim on the policy several weeks later. American Income asked her to provide essential identifying information, a copy of Mr. Shackelford's death certificate, and the Official Oklahoma Traffic Collision Report, which she did on or about February 23, 2017. Dawn Troxell, American Income's Sr. VP of Policy Benefits, testifying as a duly authorized corporate representative pursuant to Fed.R.Civ.P. 30(b)(6) testified that Mrs. Shackelford's claim was payable upon receipt of these documents. Unfortunately, as set forth below, American Income denied her claim, contending Mr. Shackelford's death was the result of recreational drug use.

**B.     Defendant's refusal to pay was unreasonable under the circumstances and its actions were violative of the duty of good faith and fair dealing.**

Insurance industry standards require American Income to know and understand the terms of the insurance policies it issues and the law that applies to those policies. Further, they require American Income to conduct reasonable claims in-

vestigations and to create systems that promptly deliver the promises within the insurance policies it sells.

American Income's claims handling process intentionally disregards these industry standards. When presented with a death claim under an accidental death and dismemberment policy, American Income's employees are taught to seek out information related to possible drug use of its deceased policyholders. If they are able to locate any information indicating a deceased policyholder had drugs in his system a the time of his or her death, they require the policy's beneficiary to provide a prescription for those drugs. If the beneficiary provides a prescription, the claim is paid. If not, the claim is denied. They are not taught to examine whether the use of drugs caused their insureds death. American Income has taken this approach to handling death claims under its accidental death and dismemberment policies for approximately 20 years.

Both the terms of the policy and Oklahoma law require payment of accidental death claims when a policyholder dies as a result of injuries suffered in an automobile accident and only allow the denial of a claim for drug use when the use of drugs was the direct physiological cause of the policyholder's death. There is no evidence that Mr. Shackelford's death was the direct physiological cause of drug use. Obviously, American Income had no such information in its possession when it denied Mrs. Shackelford's claim.

As dictated by its claims handling process, American Income demanded Mrs. Shackelford provide a copy of Mr. Shackelford's Valium prescription. Mrs. Shackelford communicated to American Income that Mr. Shackelford had a prescription for Valium, but that she did not know how to acquire it. When she asked for help acquiring it, American Income refused. Although American Income possessed a valid HIPPA authorization, it did not use it to acquire the information it claimed was necessary to pay Mrs. Shackelford's claim.

American Income's process designed to create unnecessary communication barriers between the beneficiaries of its policies and those responsible for making claims decisions. American Income accomplishes this using two categories of employees. Those in its Policy Owner Services ("POS") Department are responsible for interacting with the public, including beneficiaries, and those in the Claims Department are responsible for processing insurance claims. The job performance of the public facing POS employees is judged based on how short their service calls are. Similarly, the job performance of Claims employees is judged on how quickly they are able to process claims. The practical effect of this process is that POS employees are responsible for shielding Claims employees from the time consuming task of providing answers to beneficiaries with questions.

American Income's system further insulates its beneficiaries from those with functional knowledge of their claims by disincentivizing POS employees from transferring to Claims employees. In order to connect a beneficiary with a Claims

employee, a POS employee must escalate the request to a POS manager, who in turn coordinates with a Claims manager, who discusses the question with a Claims employee. If the Claims employee deems the contact necessary, the Claims manager may authorize the transfer. POS employees are also instructed to direct beneficiaries who wish to speak to Claims employees to make written requests to speak to the Claims employee processing their claim.

However, as is standard in most insurance companies, both POS and Claims employees have access to an electronic claims system that allows each to communicate with the other by memorializing claims related activities. In fact, insurance industry standards require American Income and its employees to use this (or some other method) to memorialize *all* pertinent claim related information. Neither American Income's POS or Claims employees utilize the electronic claims system to this end, though.

Mrs. Shackelford (and others on her behalf) called American Income on dozens of occasions to gather information on her claim and to assist in whatever way possible. Each of these calls with American Income's POS employees was recorded. American Income refused to ask Mrs. Shackelford for information on where it might request Mr. Shackelford's prescription records, likewise did it now allow her to speak to the Claims employee responsible for her claim, despite her multiple requests.

Despite possessing the knowledge that Mr. Shackelford died as a result of injuries suffered in an automobile accident, that he had a valid prescription for Valium at the time of his death, and that his elderly widow did not know how to acquire said prescription, American Income denied Ms. Shackelford's claim because, it claimed, Mr. Shackelford was a recreational drug user.

**C.  Defendant's violation of the duty of good faith caused Plaintiff injury.**

Mrs. Shackelford was devastated and humiliated by the actions of American Income.  She and Mr. Shackelford dutifully paid the premiums of their policy for more than 20 years.  However, when called upon to provide the financial protection she deserved, American Income made her feel as though her husband, a decorated veteran and the rock of his family and community, was a drug user.  When Mrs. Shackelford should have been grieving, she was battling an insurance company's whose actions have soiled the memory of an honorable man.  She suffered tremendously and continues to suffer today.

**D.  Defendant's contention that Plaintiff failed to cooperate.**

American Income has expressed a desire to label Mrs. Shackelford's actions during its handling of the claim as a failure to cooperate or as misleading.  Specifically, American Income will claim that Mrs. Shackelford believed her husband's death was the result of some cause *other* than the automobile accident in which he suffered mortal injuries and that she hid this belief from American Income. The evidence, shows otherwise.  Mrs. Shackelford maintained consistent and regular con-

tact with American Income and provided all information requested of her to the best of her ability.

If the Court allows American Income to avail itself of this affirmative defense, American Income will be required to prove Mrs. Shackelford's withheld critical information unavailable from any other source and that her actions made it impossible for American Income to otherwise uphold its legal and contractual duties. *First Bank of Turley v. Fidelity & Deposit Company of Maryland*, 928 P.2d 298 (Okla. 1996). This, it cannot do. American Income was afforded an opportunity to conduct discovery on this very issue and afterward notified Plaintiff's counsel that it "is not 'reopening' the claim or revisiting its decision to pay the claim." *See Plaintiff's Motions in Limine No. 2 -15*, Motion in Limine No. 4., Ex. 19.

## II.  Statutory, Regulatory, and Insurance Industry Standards.

Plaintiff intends to utilize insurance industry claims handling standards to provide a framework within which the jury may examine the reasonableness of American Income's claims handling conduct here. These standards are acknowledged by the employees that handled Mrs. Shackelford's claim, expert witnesses endorsed by both parties, and are memorialized within Oklahoma's statutory and administrative code. Such standards are admissible in tort suits. *See Jackson v. Oklahoma Memorial Hosp.*, 909 P.2d 765, 775 (Okla. 1995) (Finding that, in medical malpractice claim, internal hospital standards were admissible to assist jury in determining "quality of care" even though it did not establish degree of care legally

due to patient); *see also Johnson v. Hillcrest Health Center, Inc.*, 70 P.3d 811, 817-18 (Okla. 2003) ("[R]ules and regulations enacted by administrative agencies and boards pursuant to the powers delegated to them have the force and effect of law, they are material and relevant to the issue of the applicable standard of care and its alleged breach [in medical malpractice action]).

### III.    Golden Rule arguments.

"Golden Rule" arguments are those that ask jurors to place themselves in the shoes of an injured plaintiff or crime victim when deciding issues of punishment (in criminal cases) and damages (in civil cases). These arguments are "improper because [they] encourage[] the jury to depart from neutrality and decide the case on the basis of personal interest and bias rather than on the evidence." *Blevins v. Cessna Aircraft Co.*, 728 F.2d 1576,1580 (10th Cir. 1984). However, when such arguments are utilized on issues of a defendant's liability, rather than the imposition of damages, they are not "Golden Rule" arguments and the law *does not* prohibit them.

This very issue was discussed by the Tenth Circuit Court of Appeals in *Schultz v. Rice*, 809 F.2d 643 (10th Cir. 1986).[1] There, the plaintiff filed suit against her doctor for damages associated with a miscarried pregnancy. In closing argument, counsel for the defendant doctor requested the jury examine the situation from the perspective of the defendant. Although plaintiff's counsel objected, the

---

objection was overruled. A verdict for defendant ensued and was followed by appeal. The Tenth Circuit upheld the trial court's ruling, holding:

> "[Plaintiff] asserts the district court erred in overruling her objection to [defendant's] alleged 'golden rule' closing argument. However, her reliance on the 'golden rule' cases is misplaced: they deal with arguments in which the jury is exhorted to place itself in a party's shoes *with respect to damages*. Use of 'golden rule' arguments is not improper when urged on the issue of ultimate liability."

Id. at 651-65 (emphasis in original) (internal citations and quotations omitted). The Tenth Circuit relied on a Fifth Circuit decision which, similarly, involved a defendant's attorney asking the jury to step into the shoes of the defendant who was alleged to have caused an automobile collision. There, the Fifth Circuit wrote:

> "The argument complained of was not in any way directed to the question of damages; rather it related only to the reasonableness of appellee's actions under emergency conditions. The argument was not immoderate or unduly emotional and the trial court instructed the jury quite fully on the reasonable person standards of negligence. In these circumstances, the 'golden rule' cases are inappropriate and no prejudicial error has been established."

*Burrage v. Harrell,* 537 F.2d 837, 839 (5th Cir. 1976).

Defendants often seek to exclude permissible arguments by categorizing them as prohibited "Golden Rule" arguments. Courts across the nation have held that utilizing the common experience of the jury issues of liability and causation are decidedly appropriate. In fact, a jury *must* draw upon its experiences in determining the foreseeable harm of a Defendant's actions. This is especially true when a jury is asked to determine whether a defendant's conduct was reasonable.

11

After all, the Court will likely tell the jurors in this matter that it "may make deductions and reach conclusions which reason and common sense lead you to draw from the facts which you find to have been established by the testimony and evidence in the case" or some derivation of the same thought. *Oklahoma Uniform Jury Instruction No. 1.4.* The law allows and, in fact, encourages jurors to draw upon their experiences and common sense when applying the law given by the Court to the facts provided by the parties.

## IV.   Deterrent Function of Tort Law.

Tort law provides victims an avenue by which they may deter wrongful conduct. *Bosh v. Cherokee County Building Authority*, 2013 OK 9, ¶ 17, 305 P.3d 994. The Oklahoma Supreme Court has held that imposing tort liability is supported by the need to protect public policy, to deter conduct to the detriment of public policy, and to compensate those protected by the public policy. *McDonald v. Corporate Integris Health*, 2104 OK 10, par. 16. "In this state . . . it is statutorily established public policy to deter wrongdoing through civil actions . . . . When such a situation does occur, justice seems to demand a remedy." *Copeland v. Anderson,* 1985 OK CIV APP 30, ¶¶ 26 and 27, 707 P.2d 560.

The deterrent function of tort law is served by imposing the duty to prevent harm and hold the wrongful actor accountable. *McKellips v. St. Francis Hospital, Inc.*, 1987 OK 69, ¶ 22, 741 P.2d 467, 474. If recovery were to be denied where the duty imposed is to prevent the very type of harm sustained by the plaintiff, the

deterrence function of tort law would be subverted. *Hardy v. Southwestern Bell Telephone Company*, 1996 OK 4, ¶ 18, 910 P.2d 1024, 1028. Further, Oklahoma tort law provides private legal recourse to vindicate public wrongs when the wrongdoer's actions impact the public interests of health and safety. *Darrow v. Integris Health Inc.*, 2008 OK 1, ¶¶ 15-18, 176 P.3d 1204, 1214-15.

Oklahoma law acknowledges use of the deterrence function of tort law, including "send a message" statements, when properly tied to the duty owed to a plaintiff. Further, counsel have wide latitude in their opening and closing statements, subject, of course. to the court's control. *Lerma v. Wal-Mart Stores, Inc.*, 2006 OK 84, ¶ 20, 148 P.3d 880. As such, the deterrent function of tort law in a civil trial is a proper function and statements by counsel to "send a message" or asking the jury to make its communities safer are proper.

V.     **Use of Leading Questions When Examining Hostile Witnesses.**

American Income has indicated that it will make corporate executives Joel Scarborough and Dawn Troxell available for Plaintiff to call as corporate representatives during trial. Plaintiff intend to call these witnesses in its case in chief and, if necessary, use leading questions in eliciting testimony from these witnesses. Rule 611 of the Federal Rules of Evidence state that "[o]rdinarily the court should allow leading questions… when a party calls an adverse party, or a witness identified with an adverse party." Accordingly, Plaintiff should be allowed to utilize leading questions when developing testimony from American Income's corporate

representatives, its employees, agents, and any other adverse witness listed by American Income. Any objection incident to this questioning should be overruled.

Respectfully submitted,

/s/ Jacob L. Rowe
_____
Simone Fulmer, OBA #17037
Harrison C. Lujan, OBA #30154
Jacob L. Rowe, OBA #21797
Andrea R. Rust, OBA #30422
FULMER SILL PLLC
1101 N. Broadway Ave., Suite 102
P.O. Box 2448
Oklahoma City, OK  73103
Phone/Fax:  (405) 510-0077
Email:  sfulmer@fulmersill.com
hlujan@fulmersill.com
jrowe@fulmersill.com
arust@fulmersill.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 15th day of January, 2020, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Kathryn D. Terry, OBA No. 17151
Candace Williams Lisle, OBA No. 9638
Thomas G. Wolfe, OBA No. 11576
Mark E. Hornbeek, OBA No. 33198
PHILLIPS MURRAH, PC
13th Floor, Corporate Tower
101 N. Robinson Ave.
Oklahoma City, Oklahoma  73102
Telephone:  (405) 235-4100
Facsimile:   (405) 235-4133
kdterry@phillipsmurrah.com
cwlisle@phillipsmurrah.com
tgwolfe@phillipsmurrah.com
mehornbeek@phillipsmurrah.com

                                                         /s/Jacob L. Rowe