```
                 IN THE UNITED STATES DISTRICT COURT

              FOR THE WESTERN DISTRICT OF OKLAHOMA


   ALICE SHACKELFORD

            Plaintiff,
                                             No. CIV-18-0456-HE
       vs.

   AMERICAN INCOME LIFE
   INSURANCE COMPANY

            Defendant.
   ~~~~~~~~~~~~~~~~~~~~~




                            DEPOSITION OF

                         STEVEN PLITT, ESQ.



                           July 24, 2019

                             10:00 a.m.



                      1850 North Central Avenue
                             Suite 2400
                          Phoenix, Arizona







                 Talia Douglas, RPR, CR No. 50775
```

 1    transcripts.  We know it was effectively -- well, we know

 2    it was -- I don't want to use the word effectively because

 3    I can't evaluate that.  That's an evaluative term.

 4                 It was communicated to the claim environment

 5    in 2001.  It's a rarely used exclusion.  So we don't know

 6    how often it was reiterated in the claim environment.  We

 7    do know that three individuals had a different view -- four

 8    individuals had a different view of that exclusion at the

 9    time of Ms. Shackelford's claim.

10                 So either they were instructed on it and

11    didn't get it or they were not instructed on it when their

12    tenure started at the company.

13                 I can't answer that, but I can tell you that

14    the four people -- Robles, Webb, Johnson and Lindsey -- had

15    the consistent view that was inconsistent with the

16    historical perspective.

17       **Q.   So we can agree that every individual in the**

18    **claims environment that had a role in handing Ms.**

19    **Shackelford's claim did not know and understand American**

20    **Income's historical means of interpreting the drug use**

21    **exclusion, true?**

22                 MS. TERRY:  Object to the form.

23                 THE WITNESS:  Let me preface -- yes, but let

24    me preface it with this.

25                 What we have been talking about generally



1  about effective communication, kind of the process the

2  claim, is more in a generalized sense, not specific as

3  we're now talking.

4              It's understandable why an exclusion that

5  occurs so rarely doesn't get communicated on a regular

6  basis to the claim environment as what you would call an

7  implementation.

8              So that's not what I was talking about when

9  we were talking more generically about implementation claim

10 processes.

11             What I'm talking about is levels of

12 authority.  How do you process, who do you go to, to

13 process, things like that.  That's what the industry

14 standard requires.  Claim specific, it's variable.

15             Having said that, those four individuals were

16 out of sync with what the historical perspective was.

17 BY MR. ROWE:

18    **Q.   Acting as an expert witness in a case as in a**

19 **lawyer -- or acting as an expert witness in an insurance**

20 **case as a practitioner of the law, as a lawyer, can**

21 **sometimes be tricky, correct?**

22             MS. TERRY:  Object to the form.

23             THE WITNESS:  I don't know.

24 BY MR. ROWE:

25    Q.   Well -- and I'm not --



1   Q.   -- right?

2        And that standard was not met here, true?

3   A.   Well, in three instances, not only by industry
4   standard, by express -- by the actual process itself that
5   had been adopted, there was supposed to be communication
6   from the POS to the claim environment of some form to
7   indicate that there was an issue or a problem or what the
8   substance of the conversation was from Ms. Shackelford.

9   **Q.   An insurance company must know and understand the**
10  **law of the jurisdictions in which it sells policies as it**
11  **relates to the policies that they sell, true?**

12  A.   In a general way, but not -- we can agree to
13  disagree on how specific that needs to be.

14       Because, as an example, insurance companies
15  don't know every case that comes out.  They don't monitor
16  every single case that comes out of the court in their
17  jurisdiction.

18       They don't do those kinds of things, and
19  they're not required to do those kind of things.  And it's
20  not industry standard, but they can't ignore information
21  that they have about the law.

22       And generally speaking, they need to have an
23  understanding of the law relating to their policies, but it
24  doesn't get like you or I as a lawyer might know.  That's
25  why they call lawyers in the jurisdiction and say, what



```
 1  about this, what about that.
 2       Q.   Sure.
 3            And they call lawyers because the industry
 4  standard is that an insurance company has a knowledge and
 5  understanding of the law as it pertains to the policies
 6  that they're selling in the jurisdictions in which they
 7  sell these policies --
 8       A.   In a --
 9       Q.   -- true?
10       A.   -- general sense, that is true, but it is not
11  specific enough to be, I know of all of these cases.  I'm
12  going to research all of these cases.  That typically
13  doesn't happen in real time.
14       Q.   Sure.
15            There's a reasonableness component involved
16  in all of these rules --
17       A.   Yes.
18       Q.   -- right?
19            And an insurance company will not and no
20  entity will ever know the minutia of every aspect of law
21  that pertains to their business.
22            But there's a reasonable expectation that
23  they know the important aspects of the law and the
24  principles underlying the law, correct?
25       A.   Yes.
```

